[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Allen,* Slip Opinion No. 2019-Ohio-4757.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4757

THE STATE OF OHIO, APPELLANT, *v*. ALLEN, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Allen,* Slip Opinion No. 2019-Ohio-4757.]**

*Criminal law—R.C. 2929.18(A)(1)—A bank that cashes a forged check and then recredits the depositor's account is a victim to which the forger may be required to pay restitution—Court of appeals' judgment reversed.*

(No. 2018-0705—Submitted May 8, 2019—Decided November 21, 2019.)

APPEAL from the Court of Appeals for Franklin County,

No. 17AP-296, 2018-Ohio-1529.

_____

**DEWINE, J.**

{¶ 1} A statute authorizes a trial court to order an offender to pay restitution to a "victim" who suffers an economic loss. *See* R.C. 2929.18(A)(1). Under this law, is a bank that cashes a forged check and then recredits the depositor's account a victim to which the forger can be required to pay restitution? We say yes. The court of appeals held otherwise, so we reverse its judgment.

### I. A check-cashing scheme and a restitution order

{¶ 2} Zachary Allen cashed seven forged checks at branches of three different banks. He pleaded guilty to seven counts of forgery, and the trial court ordered Allen to pay restitution to the banks in the amount of the forged checks. In the process the trial court rejected Allen's argument that the banks were not victims and hence not possible beneficiaries of a restitution order under R.C. 2929.18. Allen appealed, and the Tenth District Court of Appeals reversed the trial court's judgment and vacated the restitution order. The court of appeals reasoned that the banks were not "victims" for purposes of R.C. 2929.18 but instead were third parties who had reimbursed the true victims—the account holders.

### II. R.C. 2929.18(A)(1) authorizes restitution to a victim that suffered an economic loss

{¶ 3} We must determine the proper construction of R.C. 2929.18(A)(1). R.C. 2929.18(A) allows a trial court to impose various "financial sanctions" against a defendant who committed a felony, including "[r]estitution by the offender to the victim." R.C. 2929.18(A)(1) states:

> Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
>
> (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.

Thus, the statute authorized the trial court to order Allen to pay restitution to the bank if the bank (1) was a victim and (2) suffered an economic loss.

### III. The banks were victims

{¶ 4} "Victim" is not defined in R.C. 2929.18. When a word is not defined in a statute, we look to its ordinary meaning—that is, how it would commonly be

understood in the context in which it occurs. *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8-9. As a useful starting point for our analysis, *Black's Law Dictionary* defines "victim" as a person or entity "harmed by a crime, tort, or other wrong." *Black's Law Dictionary* 1798 (10th Ed.2014).

{¶ 5} The court of appeals acknowledged this definition, but concluded that "it was the account holders, not the banks, who suffered the direct economic harm from Allen's actions." 2018-Ohio-1529, 101 N.E.3d 734, ¶ 16. The banks, it held, were merely third parties that were indirectly harmed by Allen's actions after recrediting the accounts of the actual victims, the account holders. *Id*. As we explain, the court of appeals' holding is premised on a misunderstanding of how the banks were harmed by Allen's check-cashing scheme. When properly considered, it is apparent that the banks were victims of Allen's crimes under any plausible, common-sense understanding of the word "victim." There are three main considerations that support this conclusion.

{¶ 6} Start with the relationship between a bank and a checking-account holder. When a customer deposits money with a bank, the bank typically gains a property interest in the money and in exchange, gives the customer a contractual right to payment on demand. *Union Properties, Inc. v. Baldwin Bros. Co.*, 141 Ohio St. 303, 311, 47 N.E.2d 983 (1943). The relationship between the account holder and the bank, therefore, is that of a creditor and a debtor. *Id*.

{¶ 7} As noted by the United States Supreme Court, because of this relationship, "a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from [the bank]." *Shaw v. United States*, ___U.S.___, 137 S.Ct. 462, 466, 196 L.Ed.2d 373 (2016). When a bank is presented with a check, it pays out money (in which it has a property interest), and it simultaneously adjusts the depositor's account to reflect less available money for on-demand payment. Thus, the bank loses something in which

it has a property interest as soon it pays the fraudulent check. *Id*. The loss occurs at the moment of payment to the thief, not at the later point in time when the bank corrects the error by recrediting funds back to the depositor's account.

{¶ 8} Second, by statute, the bank has a duty to correct its erroneous deduction from the depositor's account. R.C. 1304.30 (UCC 4-401) states that "[a] bank may charge against the account of a customer an item that is properly payable * * *. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank," R.C. 1304.30(A). R.C. 1303.43(A) (UCC 3-403(a)) states that an "unauthorized signature is ineffective except as the signature of the unauthorized signer." In other words, the signature on a forged check is inoperative as the signature of the account holder. Thus, for a bank to charge a depositor's account, it must be the case *both* that the depositor actually authorized the payment and also that the bank complied with any agreement between the bank and the depositor. Based on these requirements, we have held that a bank is strictly liable to its customer for payment of a forged check. *Ed Stinn Chevrolet, Inc. v. Natl. City Bank*, 28 Ohio St.3d 221, 226-227, 503 N.E.2d 524 (1986), *modified on other grounds on rehearing*, 31 Ohio St.3d 150, 509 N.E.2d 945 (1987). As a result, in a fraudulent-check case, the Revised Code places the economic loss on the bank and not on the account holder.

{¶ 9} Third, the banks were the targets of Allen's crimes because Allen defrauded and tricked the banks when he presented the forged checks to the bank teller. The account holders, on the other hand, never interacted with Allen and were never duped by him.

{¶ 10} Taken together, these three considerations—the banks having lost something in which they had a property interest at the moment of the crime, the banks bearing the economic loss by operation of statute, and the banks having been the targets of Allen's crimes—establish that the banks are victims under any common-sense understanding of that term. A person or a business entity is

paradigmatically a victim when they are duped into giving their property to a thief, and they suffer an economic loss as a result.

{¶ 11} In arguing that restitution is improper, Allen looks to caselaw involving insurance companies. We have suggested that under the current version of R.C. 2929.18(A)(1), insurance companies may not receive restitution for economic losses after they reimburse a customer for a loss covered by an insurance policy. *See, e.g.*, *State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, ¶ 1. But there is a significant difference between an insurance company, which might ultimately suffer an economic loss, and a bank that is hoodwinked by a fraudulent-check scheme. When an insurance company makes a payment owed under a contract, it is merely fulfilling an obligation that it voluntarily took on to protect another against a loss. In such a case, it is hard to describe the insurer as a victim of a crime when it was not the target of the crime and when it was merely providing the service that it had agreed to perform in return for the payment of an insurance premium. An insurer contracts to take on a risk. It does not become a victim merely because that risk comes to pass.

{¶ 12} In contrast, in a fraudulent-check case, it is the bank that is defrauded and hence, it is the bank that is object of the crime; it is the bank that suffers the economic loss; and, it is the bank that loses property in which it has an interest at the moment of the fraud. Under any plausible understanding, that is enough for the bank to count as a victim.

{¶ 13} In addition to proffering that its preferred reading of the statute would make better public policy, the dissent advances two other arguments. First, it tries to appropriate the definition of "victim" contained in the victim's rights chapter of the Revised Code, R.C. 2930. This argument is refuted by simply reading the statute. Under R.C. 2930.01's express terms, the definitions in the victim's rights chapter are limited to that chapter and do not govern the provisions

in R.C. 2929.18—"As used in this chapter: * * * 'Victim' means * * *," R.C. 2930.01(H).

{¶ 14} Second, the dissent notes that the former version of R.C. 2929.18 expressly allowed restitution to be paid to third parties, and jumps to the conclusion that by removing this language the legislature somehow meant to bar restitution to banks that were the victims of a crime. But, the current version of the statute draws no distinction between victims and third parties. It simply requires a court to assess whether the would-be beneficiary of a restitution order is a victim that suffered an economic loss. As we have explained, under any plausible understanding of the term, the bank was a victim of Allen's fraud that suffered an economic loss thereby.

{¶ 15} For the reasons stated above, we reverse the Tenth District's judgment and reinstate the trial court's order imposing restitution.

Judgment reversed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 16} The majority holds that a bank that cashed a forged check is a victim entitled to restitution under R.C. 2929.18. I disagree and therefore dissent.

{¶ 17} R.C. 2929.18(A) governs the imposition of restitution as part of a felony sentence. R.C. 2929.18(A)(1) provides that restitution may be provided to "the victim of the offender's crime" and may be "made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court." The majority rightly finds that "victim" is not defined in R.C. 2929.18. But the majority then fails to note that "victim" is defined in R.C. 2930.01, in the chapter of the criminal code setting forth victims' rights. And we have repeatedly held that felony-

6

sentencing statutes must be read as a whole. *State v. Amos,* 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528, ¶ 12.

{¶ 18} R.C. 2930.01(H)(1) provides that a "victim" is "[a] person who is identified as the victim of a crime * * * in a police report or in a complaint, indictment, or information that charges the commission of a crime and that provides the basis for the criminal prosecution."

{¶ 19} In this case, the indictment does not identify the individual banks as victims for any of the forgery counts. And nothing in the record indicates that the banks were identified as victims in a police report, complaint, or information. Therefore, those banks have no claim to restitution. And because no victim is ever identified in the charging instrument, there is no legal predicate for ordering restitution. It was therefore error for the trial court to order appellee, Zachary Allen, to pay restitution.

{¶ 20} But even if a defendant were ordered to pay restitution to an unnamed victim, a bank would not qualify as a victim entitled to restitution. Former R.C. 2929.18(A)(1) provided that a restitution order "may include a requirement that reimbursement be made to third parties for amounts paid to or on behalf of the victim * * * for economic loss resulting from the offense." *See* 148 Ohio Laws, Part IV, 8674, 8767. On June 1, 2004, however, the legislature amended R.C. 2929.18 to delete all references to restitution for third parties. *See* 2003 Sub.H.B. No. 52, 150 Ohio Laws, Part III, 3865, 3913-3914.

{¶ 21} In *State v. Aquirre,* 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, ¶ 1, this court recognized that the General Assembly removed the references to third parties from R.C. 2929.18, noting that "[g]iven these deletions, 'the legislative intent to disallow payment to victims' [third party] insurance companies is clear.' " *Id.*, quoting *State v. Johnson*, 1st Dist. Hamilton No. C-100702, 2011-Ohio-5913, ¶ 5. Several of Ohio's appellate districts have considered the issue since the references to third parties were removed from R.C. 2929.18 and have

uniformly held that when a bank reimburses its customer for funds that were fraudulently withdrawn from the customer's account, that bank is a third party and is not entitled to restitution. *See State v. Kiser*, 2d Dist. Montgomery No. 24419, 2011-Ohio-5551, ¶ 16; *State v. Stump*, 4th Dist. Athens No. 13CA10, 2014-Ohio-1487, ¶ 12; *State v. Harris*, 6th Dist. Wood No. WD-14-069, 2015-Ohio-4412, ¶ 8. Indeed, like the courts of appeals in the cases cited above, the Tenth District Court of Appeals held, in this case, that the banks were third parties and not victims and therefore not entitled to restitution. I see no error in the Tenth District's analysis.

{¶ 22} A bank does not automatically recredit a customer's account for an improper withdrawal. R.C. 1304.30 (Ohio's codification of Uniform Commercial Code 4-401) states:

A bank may charge against the account of a customer an item that is properly payable from that account * * *. An item is properly payable if it is authorized by the customer and is *in accordance with any agreement between the customer and bank.*

(Emphasis added.) R.C. 1304.30(A).

{¶ 23} Therefore, by its very terms, the statute does not necessarily obligate a bank to always reimburse its customer. And any account holder who has been the victim of a fraudulent withdrawal knows it is not an easy feat to ensure that the unauthorized withdrawal is recredited to his or her account. Just like an insurance company looks to its insurance-policy contract before reimbursing a client for a covered loss, so too does a bank look to its agreement with its customer before recrediting stolen funds to a customer's account. And just as an insurance company will cover losses only as defined in its contract, a bank will surely refer to the specific language in its agreement with its customer in order to determine whether

reimbursement should occur. Thus, depending on the agreement between the bank and its customer, reimbursement for a suffered loss may not be such a sure thing.

{¶ 24} By deliberately deleting statutory language that previously permitted restitution to a third party that reimbursed the actual victim of an offense, the General Assembly perhaps realized that our overworked and resource-strapped probation departments should not continue to bear the burden of also serving as collection agencies for private commercial entities such as banks, which have other civil processes available for recovering a loss incurred or collecting a debt owed. A bank operates with the obligation to examine the signature cards on file for its customers' accounts. It is therefore arguable that in this case, Allen's unauthorized withdrawals would not have occurred in the accounts for Park Club Apartments, Tuttle's Grove Apartments, and Progressive Flooring Services, Inc., had the banks examined the signature cards on file for each of the businesses. .

{¶ 25} Taxpayer money funds our probation departments. Taxpayer money should not be used to recover losses caused by a third party's negligence. Banks are well aware of available civil processes for loss recovery. Relieving a bank from fault for charging against a customer's account without the customer's authorization puts the bank's burden squarely on the backs of the taxpayers.

{¶ 26} And to what end? Many times, issuing a restitution order is practically futile. Indigent defendants are not the most reliable payors. With collectability uncertain at best, most restitution orders may as well be prestamped "returned for nonsufficient funds."

{¶ 27} I see no statutory authority for the restitution ordered in this case. Moreover, probation officers' valuable time and limited resources are better spent devoting their efforts to work toward financial recovery for those victims that the General Assembly has designated. I would affirm the judgment of the Tenth District Court of Appeals. I dissent.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Barbara A. Farnbacher, Assistant Prosecuting Attorney, for appellant.

Yeura R. Venters, Franklin County Public Defender, and Robert D. Essex, Assistant Public Defender, for appellee.

_____