[Cite as *State v. Harris*, 2020-Ohio-4600.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2019-0075 |
| DOMINIQUE F. HARRIS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:     Criminal appeal from the Muskingum
County Court of Common Pleas, Case No.
CR2019-0047


JUDGMENT:     Affirmed in part; reversed in part


DATE OF JUDGMENT ENTRY:     September 24, 2020


APPEARANCES:


For Plaintiff-Appellee     For Defendant-Appellant


D. MICHAEL HADDOX
Prosecuting Attorney     CARLY M. EDELSTEIN
By: TAYLOR P. BENNINGTON     Assistant Public Defender
Assistant Prosecutor     250 East Broad Street, Ste. 1400
Fifth St., P.O. Box 189     Columbus, OH 43215
Zanesville, OH 43701

*Gwin, P.J.*

{¶1}    Defendant-appellant Dominique Harris ["Harris"] appeals his sentence after entering a negotiated guilty plea in the Muskingum County Court of Common Pleas. Appellee is the State of Ohio[1].

*Facts and Procedural History*

{¶2}    On May 18, 2017, Harris met with Clay Gorby and Dutch Bess.  The three ingested illegal narcotics for a period of time.  PT. at 10.[2] The three continued to use narcotics, until at some point in the early morning hours, Gorby began to overdose and lost consciousness.  Bess and Harris gathered evidence from around his body, stole a safe that was in his house, packed up the drugs, and fled the scene.  PT. at 10-11. Once safely home, Harris called the police, lied about his identity, and reported the location where Gorby's body would be found.  PT. at 9.  When police found Clay's body, they found his hands to be cold indicating that he has passed sometime before their arrival. PT. at 9.  The state alleged that the type of evidence that Harris and Bess removed from the scene was the type of evidence that the state would have utilized to prosecute drug dealers who supply drugs to an individual who fatally overdoses.  PT. at 11.

{¶3}    Harris was indicted for the crime of tampering with evidence, a felony of the third degree.  On July 22, 2019, Harris entered a negotiated plea of guilty to his indicted offense of tampering with evidence.  A pre-sentence investigation was ordered.  On September 11, 2019, Harris appeared for a sentencing hearing.  At that hearing, Harris

---

[1] Public Health Scholars and Treatment and Recovery Organizations and Professionals have filed an Amici Curiae brief in support of Harris.

[2] For clarity, references to the transcript of the Plea Hearing held July 22, 2019 will be referred to as "PT." and references to the Sentencing Hearing held September 11, 2019 will be referred to as "ST."

claimed to have entered a recovery program two days before Gorby's death.  He claimed to have not used drugs for the period of time between Gorby's death and the sentencing hearing.

{¶4}   The trial court sentenced Harris to 30 months in prison and ordered him to pay $14,616.71 in restitution for funeral expenses to the family of Gorby.

*Assignments of Error*

{¶5}   Harris raises five Assignments of error,

{¶6}   "I. THE TRIAL COURT VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT BY SENTENCING DOMINIQUE HARRIS TO A THIRTY-MONTH PRISON TERM BECAUSE HIS DISABILITY NECESSITATES MEDICALLY-ASSISTED TREATMENT.  42 U.S.C. §§ 12101 ET SEQ.

{¶7}   "II.   THE TRIAL COURT VIOLATED MR. HARRIS' EQUAL PROTECTION RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS BY SUBJECTING HIM TO DISCRIMINATION ON THE BASIS OF HIS DISABILITY AND THE TREATMENT IT REQUIRES.  FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 2.

{¶8}   "III. DOMINIQUE HARRIS' SENTENCE IS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE IN THE RECORD.  FIFTH, SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION.  R.C. 2953.08.  R.C. 2929.12.

{¶9}   "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING DOMINIQUE HARRIS TO PAY RESTITUTION IN THE AMOUNT OF CLAY GORBY'S FUNERAL EXPENSES.  R.C. 2929.18

{¶10} "V. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION. STRICKLAND V. WASHINGTON, 466 U.S. 668, 104 S.CT. 2052, 80 L.ED.2D 674 (1984)."

**Standard of Appellate Review – Assignments of Error I, II. & IV.**

{¶11}   Harris agrees that because he did not object or raise the issues set forth in his First, Second, and Fourth Assignments of Error in the trial court our review is limited to the "plain error" standard of review.  (Appellant's brief at 4).

{¶12}   In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim. R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

{¶13}   "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *United States v. Marcus*, 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010) (internal quotation marks and citations omitted).

{¶14} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Perry*, 101 Ohio St.3d 118, 802 N.E.2d 64, ¶14 (2004).

I.

{¶15} In his First Assignment of Error, Harris claims the trial court violated Title II of the Americans with Disabilities Act, which prohibits discriminating against individuals with disabilities when it sentenced him to prison alleging, "his opioid use disorder is treated, in part, with Suboxone."

**Issue for Appellate Review**: *Whether the trial court's sentence of 30-months imprisonment was clear error affecting Harris's substantial rights and seriously affecting the fairness, integrity or public reputation of judicial proceedings.*

{¶16} The sole evidence presented to support Harris's claim that the trial court violated the American's with Disabilities Act because he is disabled due to an opioid use disorder is an undated, unverified letter, addressed "To whom it may concern" contained within the PSI from a Recovery Support Specialist with SperoHeath. The letter states that Harris was admitted to treatment on April 7, 2018 and was "prescribed Suboxone 8/2MG 1.25 film per day when last seen at our office by the prescribing provider on 08/08/2019." The letter and the record before the trial court do not indicate when Harris was first prescribed Suboxone or how long he had been using the substance in treatment.

The letter and the record before the trial court contain no evidence concerning the treatment provider's reason for prescribing Suboxone to Harris.

{¶17} During his interview with the probation officer, Harris stated that he had not used drugs since May 2017. Harris's attorney told the trial judge before sentencing that Harris has been clean for two years. ST. at 3; 5. He further told the trial judge that Harris would be taken off Suboxone completely "today." ST. at 5. Harris himself told the trial judge when asked that he had stopped using drugs in May 2017. ST. at 7. Harris further represented that he had started treatment near the time of the incident in 2017. Id. Harris admitted that he left the drug rehabilitation program for one year. ST. at 8. He further admitted that he was not going to the treatment program or receiving Suboxone during that one-year period. ST. at 8. When asked by the trial judge why, after going a year without using drugs and without taking Suboxone, he would go back to treatment and the treatment provider would find that he needed to be prescribed Suboxone, Harris replied, "Just—I don't know." ST. at 8. Harris presented no expert testimony, testimony from the treatment program providers, records, or other evidence to the trial court to support his claim that he is disabled due to an opioid use disorder.

{¶18} Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. Section 12132. Title II of the ADA "authorizes suits by private citizens for money damages against public entities that violate Section 12132." *United States v. Georgia,* 546 U.S. 151, 153; 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). In each case cited in Harris's brief in this Court,

the complainant filed a civil action in the federal district court alleging a violation of the Americans With Disability Act [ADA] pursuant to 42 U.S.C. 12132 seeking monetary damages and/or injunctive relief.[3]  Harris has cited no authority for the proposition that the Americans with Disabilities Act would mandate a state trial judge sentence a defendant who entered a negotiated guilty plea to a felony of the third degree to community control sanctions rather than a prison term solely on the basis that the defendant is addicted to drugs, or using Suboxone in a treatment program.  An individual has no substantive right to a particular sentence within the range authorized by statute. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204-1205(1977).

{¶19}  We find the record does not support the claim that the trial judge sentenced Harris to prison because he was addicted to drugs or because he was using Suboxone. Rather, it would appear that the trial judge discounted Harris' credibility when he stated that he had not used any illegal drugs in two years.  The fact that a medical provider prescribed Suboxone in August 2019 to Harris provides evidence to support the trial court's concern.

---

[3] For example, in *Pennsylvania Dept. of Corrections v. Yerskey*, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215(1998), cited at page 9 of Harris's brief, a State prison inmate, who was denied admission to prison boot camp program due to history of hypertension, sued the Pennsylvania Department of Corrections and several officials in federal district court alleging that the exclusion violated the Americans with Disabilities Act of 1990 (ADA), Title II of which prohibits a "public entity" from discriminating against a " qualified individual with a disability" on account of that disability,  42 U.S.C. § 12132.  In *Thompson v. Davis,* 295 F.3d 890(9th Cir. 2002) cited by Harris at page 10 of his brief, State prisoners with substance abuse histories brought action in federal district court for prospective injunctive relief against state parole authority officials, alleging that the authority followed an unwritten policy of automatically denying parole to prisoners with substance abuse histories in violation of Title II of the Americans with Disabilities Act (ADA).  In *A Helping Hand, LLC v. Baltimore Cty.,* 515 F.3d 356(4th Cir. 2008), cited by Harris at page 7 of his brief, an operator of methadone treatment clinic brought action in federal district court alleging that county zoning ordinance rendering operation of the clinic at its chosen location unlawfully violated the Americans with Disabilities Act (ADA) and Due Process Clause.

{¶20} We decline to find that the trial court committed plain error in sentencing Harris to a prison term because we find no clear error affecting Harris's substantial rights and seriously affecting the fairness, integrity or public reputation of judicial proceedings.

{¶21} Harris's First Assignment of Error is overruled.

II.

{¶22} In his Second Assignment of Error, Harris claims his equal protection rights were violated when he was sentenced to prison because he takes Suboxone. In support of his claim, Harris compares his sentence to that of his co-defendant's sentence.

**Issue for Appellate Review**: *Whether the trial court's sentence of 30-months imprisonment was clear error affecting Harris's substantial rights and seriously affecting the fairness, integrity or public reputation of judicial proceedings.*

{¶23} In our disposition of Harris's First Assignment of Error, we found that the record does not support the claim that the trial judge sentenced Harris to prison because he was addicted to drugs or because he was using Suboxone. The fact that Bess received a different sentence does not in and of itself establish that Harris was punished for using Suboxone. The record precludes meaningful comparison of Harris's sentence to that of his co-defendant. We have neither the pre-sentence investigation report nor the transcript concerning the trial court's sentencing of Bess. During his sentencing hearing, Harris did not raise the issue of dissimilar sentencing. Harris did not request a sentence similar to the codefendant, nor did he present any evidence for the trial court to compare the culpability and criminal history of the codefendant to Harris[4].

---

[4] The issue of the trial court imposing different sentences upon co-defendants is discussed further in our disposition of Harris's Third Assignment of Error.

{¶24} In reviewing the transcript of Harris's sentencing hearing, we cannot say that the trial court violated the equal protection clause by imposing a greater sentence upon Harris. The record is silent as to the co-defendant's culpability and completely silent as to his criminal history.

{¶25} We decline to find that the trial court committed plain error in sentencing Harris to a prison term because we find no clear error affecting Harris's substantial rights and seriously affecting the fairness, integrity or public reputation of judicial proceedings.

{¶26} Harris's Second Assignment of Error is overruled.

III.

{¶27} In his Third Assignment of Error, Harris maintains that his sentence is not supported by competent, credible evidence.

**Standard of Appellate Review.**

{¶28} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22*; State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31.

{¶29} In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. 158 Ohio St.3d 279, 2019-Ohio-4761, ¶16-18; *State v. Anthony,* 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶60.

{¶30} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C.

2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

{¶31} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See* also, In *re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

**Issue for Appellate Review:** *Whether the record clearly and convincing does not support Harris's sentence or the sentence is otherwise contrary to law.*

{¶32} R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶33} R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the

purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12 is a guidance statute that sets forth the seriousness and recidivism criteria that a trial court "shall consider" in fashioning a felony sentence. Subsections (B) and (C) establish the factors indicating whether the offender's conduct is more serious or less serious than conduct normally constituting the offense. These factors include the physical or mental injury suffered by the victim due to the age of the victim; the physical, psychological, or economic harm suffered by the victim; whether the offender's relationship with the victim facilitated the offense; the defendant's prior criminal record; whether the defendant was under a court sanction at the time of the offense; whether the defendant shows any remorse; and any other relevant factors. R.C. 2929.12(B). The court must also consider any factors indicating the offender's conduct is less serious than conduct normally constituting the offense, including any mitigating factors. R.C. 2929.12(C). Subsections (D) and (E) contain the factors bearing on whether the offender is likely or not likely to commit future crimes.

{¶34} In *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, the court discussed the effect of the *State v. Foster,* 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶ 1 and ¶ 11, *citing Foster* at ¶ 100, *See also, State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823.

{¶35} "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, *see also State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1; *State v. Firouzmandi* supra at ¶ 29.

{¶36} Thus, post-*Foster,* "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter*, 5th Dist. No. 2006–CA–0025, 2006–Ohio–4061; *State v. Delong,* 4th Dist. No. 05CA815, 2006–Ohio–2753 at ¶ 7–8. Therefore, post-*Foster*, trial courts are still required to consider the general guidance factors in their sentencing decisions.

{¶37} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Polick*, 101 Ohio App.3d 428, 431(4th Dist. 1995); *State v. Gant*, 7th Dist. Mahoning No. 04 MA 252, 2006–Ohio–1469, ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), *citing State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94(1992); *State v. Hughes*, 6th Dist. Wood No. WD–05–024, 2005–Ohio–6405, ¶10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), *State v. Woods*, 5th Dist. Richland No. 05 CA 46, 2006–Ohio–1342, ¶ 19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered

the applicable seriousness and recidivism factors") (citations omitted); *State v. Taylor,* 5th Dist. Richland No. 17CA29*,* 2017-Ohio-8996, ¶23.  In *State v. Bump,* this Court observed,

**{¶38}**  The failure to indicate at the sentencing hearing the court has considered the factors in R.C. 2929.11 and 2929.12 does not automatically require reversal.  *State v. Reed,* 10th Dist. No. 09AP–1163, 2010–Ohio–5819, ¶ 8.  "When the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes."  Id., *citing Kalish* at ¶ 18, fn. 4.  The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors.  *State v. Arnett*, 88 Ohio St.3d 208, 215, 2000–Ohio–302; Bump*,* 5th Dist. Ashland No. 11-COA-028, 2012-Ohio-337, ¶12.  *See, also, State v. Cyrus,* 63 Ohio St.3d 164, 166, 586 N.E.2d 94(1992)("Nothing in the statute or the decisions of this court imposes any duty on the trial court to set forth its reasoning.").

**{¶39}**  In the case at bar, the trial court considered the PSI and the statements made during the sentencing hearing.  ST. at 10-11.

**{¶40}**   In *State v. Hill,* 70 Ohio St.3d 25, 635 N .E.2d 1248(1994), the defendant was convicted of complicity to trafficking in marijuana, and sentenced to one year in prison and further ordered to forfeit his apartment complex.  His co-defendant received probation instead of a prison sentence.  Id. at 29, 635 N.E.2d at 1252.  On appeal, he argued that the trial court abused its discretion by giving him a harsher sentence than was given his co-defendant.  Id.  The Ohio Supreme Court observed,

There is no question that on its face the sentence received by appellant, when compared to Newbauer's punishment, is disproportionate.

Given the fact that Newbauer received probation, appellant's one-year prison sentence does appear to be harsh. However, as a general rule, an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits. See, generally, *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 24, 34 O.O.2d 13, 14, 213 N.E.2d 179, 180-181. *See, also, State v. Cassidy* (1984), 21 Ohio App.3d 100, 102, 21 OBR 107, 108-109, 487 N.E.2d 322, 323; *State v. Burge* (1992), 82 Ohio App.3d 244, 249, 611 N.E.2d 866, 869; and *State v. Grigsby* (1992), 80 Ohio App.3d 291, 302, 609 N.E.2d 183, 190.

70 Ohio St.3d at 29, 1994-Ohio-2, 635 N.E.2d 1248. Harris cites no precedent, or any other authority, for reversal of an otherwise valid sentence on the basis that more culpable co-defendants were not punished more severely. There is no requirement that co-defendant's receive equal sentences. *State v. Lloyd*, 11th Dist. Lake No. 2002-L-069, 2003-Ohio-6417 at ¶ 21; *United State v. Frye*, 831 F.2d 664, 667(6th Cir. 1987). Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes. *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 50. In this case, there is nothing in the record to show that the difference in Harris's sentence from that of his co-defendant was the result of anything other than the individualized factors that were applied to Harris. *State v. Beasley,* 8th Dist. Cuyahoga No. 82884, 2004-Ohio-988, ¶ 23.

{¶41} The record before us, such as it is, does not show that the trial court failed to comply with the consistency principles set forth in R.C. 2929.11, R.C. 2929 .12, R.C.

2929.13, or R.C. 2929.14. We conclude that the trial court did not commit error when it sentenced Harris to a sentence that differed from his co-defendant. Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code. While Harris may disagree with the weight given to these factors by the trial judge, Harris's sentence was within the applicable statutory range and therefore, we have no basis for concluding that it is contrary to law.

{¶42} Harris's Third Assignment of Error is overruled.

IV.

{¶43} In his Fourth Assignment of Error, Harris argues that the trial court committed prejudicial error in ordering him to pay restitution for the funeral expenses of the decedent to the decedent's family in the amount of $14, 616.71.

**Issue for Appellate Review:** *Whether the trial court's order of restitution was clear error affecting Harris's substantial rights and seriously affecting the fairness, integrity or public reputation of judicial proceedings.*

{¶44} R.C. 2929.18(A) allows a trial court to impose various "financial sanctions" against a defendant who committed a felony, including "[r]estitution by the offender to the victim." R.C. 2929.18(A)(1) states:

Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.

{¶45} Thus, the statute authorized the trial court to order Harris to pay restitution to the decedent's family if the decedent's family (1) was a victim and (2) suffered an economic loss. *State v. Allen,* 159 Ohio St.3d 75, 2019-Ohio-4757, 147 N.E. 3d 618, ¶3.

{¶46} Recently, the Ohio Supreme Court has indicated that the definition of victim found in R.C. 2930.01(H)(1) is not applicable in determining whether a person or entity is a victim for purposes of ordering restitution under R.C. 2929.18. *State v. Allen,* 159 Ohio St.3d 75, 2019-Ohio-4757, 147 N.E. 3d 618, ¶13. *See, State v. Jones,* 1st Dist. Hamilton No. C-190039, 2020-Ohio-81, ¶8.

{¶47} In the case at bar, Harris was charged and convicted of Tampering with Evidence. R.C. 2921.12 states in relevant part,

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

* * *

{¶48} Thus, "There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of

impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley,* 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶11. In the case at bar, the state alleged that Harris and his co-defendant removed evidence from the scene where the decedent had overdosed and died. The type of evidence that Harris and Bess removed from the scene was the type of evidence that the state would have utilized to prosecute drug dealers who supply drugs to an individual who fatally overdoses. PT. at 11.

{¶49} In *State v. Durham*, the defendant had been indicted for one count of aggravated arson and one count of insurance fraud. 4th Dist. Meigs Nos. 13CA2, 13CA3, 2014-Ohio-4915, ¶4. Durham eventually plead guilty to an amended charge of misconduct at an emergency. *Durham,* ¶5. The trial court order Durham to pay restitution for the fire damage to the home that he had been accused of setting on fire. *Durham*, ¶ 7; ¶10. On appeal, Durham alleged that the trial court committed plain error in ordering him to pay restitution because the homeowner was not a "victim" and the damages related to the aggravated arson charge for which he had not been convicted. *Durham,* ¶18. The court of appeals agreed,

> Durham claims that a person like Collins, whose house was damaged in a fire, cannot be a victim of this offense because the victim is— as the trial court initially stated during the proceedings below—the official whose duties are being hampered by the offender's misconduct. But as the state counters, Durham was convicted of the first-degree misdemeanor version of the crime, which specifies that the misconduct "creates a risk of physical harm to persons or property." R.C. 2917.13(C). It is possible that

a person's misconduct at an emergency can cause physical harm to persons or property that the official is trying to help. For example, a person could interfere with firefighters to such an extent that the interference prevents them from limiting the damage caused by a fire.

Nevertheless, there is no evidence in the record that supports the trial court's finding that Collins incurred damage to her house directly or proximately due to Durham's interference with firefighters or police officers responding to the scene. At best, the evidence specified at the plea and sentencing hearings and the victim-impact statement instead indicated in ambiguous terms that Collins believed that her property was damaged because Durham, or "somebody" or "someone" else "caught it on fire" and caused the arson.

Consequently, the sole evidence in the record that supports that Collins was a victim is related to the original charge of aggravated arson, not the amended charge of misconduct at an emergency. A trial court errs when it orders a defendant to pay restitution for damages attributable to an offense for which he was charged, but not convicted. *State v. Ellis*, 4th Dist. Washington No. 02CA48, 2003–Ohio–2243, ¶ 8–9, *citing State v. Hafer*, 144 Ohio App.3d 345, 348–349, 760 N.E.2d 56 (4th Dist.2001); *State v. Stiles,* 12th Dist. Butler No. CA2011–01–003, 2011–Ohio–4173, ¶ 7.

Because Collins was not a victim of the charge for which Durham was convicted, the trial court committed plain error by ordering Durham to pay restitution to her. *See Leslie*, 4th Dist. Hocking Nos. 10CA17 and

10CA18, 2011–Ohio–2727, at ¶ 33 (reversing restitution order to a non-victim of a crime as plain error).

*Durham,* 4th Dist. Meigs Nos. 13CA2, 13CA3, 2014-Ohio-4915, ¶25-¶26.

**{¶50}** In the case at bar, Harris was not convicted of any crime relating to causing or contributing to the death of the decedent. The record in the case at bar contains no evidence concerning the time of death or the specific manner of death. Under the record before this court, it is equally plausible that the decedent had already passed before Harris and Bess cleaned up the scene and fled.

**{¶51}** Further, we cannot say that the decedent's family is a "victim" of the crime of tampering with evidence. As the Supreme Court noted in *Allen,*

> "Victim" is not defined in R.C. 2929.18. When a word is not defined in a statute, we look to its ordinary meaning—that is, how it would commonly be understood in the context in which it occurs. *Great Lakes Bar Control, Inc. v. Testa,* 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8-9. As a useful starting point for our analysis, Black's Law Dictionary defines "victim" as a person or entity "harmed by a crime, tort, or other wrong." Black's Law Dictionary 1798 (10th Ed.2014).

> * * *

> In addition to proffering that its preferred reading of the statute would make better public policy, the dissent advances two other arguments. First, it tries to appropriate the definition of "victim" contained in the victim's rights chapter of the Revised Code, R.C. Chapter 2930. This argument is refuted by simply reading the statute. Under R.C. 2930.01's express terms, the

definitions in the victim's rights chapter are limited to that chapter and do

not govern the provisions in R.C. 2929.18—"As used in this chapter: * * *

'Victim' means * * *," R.C. 2930.01(H).

159 Ohio St.3d 75, 2019-Ohio-4757, 147 N.E.3d 618, ¶4; ¶13.  The "crime" or "wrong" in

the case at bar was removing potential evidence from the scene for the purpose of

impairing its value or availability in an official proceeding or investigation.  The "crime" or

"wrong" was not causing or contributing to the death of the decedent.

{¶52}  Therefore, we find the trial court committed plain error by ordering Harris to

pay restitution in the amount of $14,616.71 to the family of the decedent Clay Gorby.

{¶53}  Harris's Forth Assignment of Error is sustained.

V.

{¶54}  In his Fifth Assignment of Error, Harris argues that he received ineffective

assistance of counsel because his trial attorney failed to raise the issues as set forth in

Assignment of Error I through IV.

**Standard of Appellate Review.**

{¶55}  To prevail on a Sixth Amendment claim alleging ineffective assistance of

counsel, a defendant must show that his counsel's performance was deficient and that

his counsel's deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S.

668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To show deficiency, a defendant must

show that "counsel's representation fell below an objective standard of reasonableness."

Id., at 688, 104 S.Ct. 2052.  And to establish prejudice, a defendant must show "that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *See, also, Andrus, v. Texas,* 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335(June 15, 2020).

**Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to raise the issues set forth in Harris's Assignments of Error I - IV the result of the proceeding would have been different.*

{¶56} As we have discussed, none of the instances raised by Harris rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Harris cites in support of his claim that he was denied effective assistance of counsel, we find Harris was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶57} Therefore, Harris has failed to establish that he has been prejudice by trial counsel's performance.

{¶58} Harris's Fifth Assignment of Error is overruled.

**CONCLUSION.**

{¶59} The judgment of the Muskingum County Court of Common Pleas is affirmed in part and reversed in part. Pursuant to Section 3(B) (2), Article IV of the Ohio Constitution the trial court's order that Harris pay restitution in the amount of $14,616.71 to the family of the decedent Clay Gorby through the Muskingum County Clerk of Courts is vacated. This decision in no way affects the sentence in any other respect. It only affects the trial court's order that Harris pay restitution in the amount of $14,616.71 to the family of the decedent Clay Gorby through the Muskingum County Clerk of Courts. The

sentence of the Muskingum County Court of Common Pleas is affirmed in all other respects.


By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur