[Cite as *State v. Schuler*, 2019-Ohio-1585.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-04-067 |
| Appellee, | : | O P I N I O N<br>4/29/2019 |
| | : | |
| - vs - | : | |
| | : | |
| PAUL E. SCHULER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA I COURT
Case No. CRB1701018(B)


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Scott N. Blauvelt, 315 South Monument, Hamilton, Ohio 45011, for appellant


**M. POWELL, J.**

{¶ 1} Appellant appeals his conviction and sentence in the Butler County Area I Court for animal cruelty.

{¶ 2} On June 28, 2017, Butler County Deputy Dog Warden Patricia Todd received a report from a deputy sheriff who, while responding to a noise complaint, had observed a pit bull on appellant's property that was unable to walk "and in poor condition." Deputy Todd

went to appellant's home. There, she observed a female pit bull lying on the driveway, drinking from a mud puddle. The pit bull was unable to get up or walk and had open sores on her backside and maggot larvae in her vaginal area. Appellant told Deputy Todd that the pit bull belonged to his son and that he was trying to rehabilitate the dog. Unable to take the pit bull to a veterinarian, appellant voluntarily released the dog to Deputy Todd. It was later euthanized. While on the property, Deputy Todd further observed two Australian cattle dogs. One was extremely thin. The other did not look well and suffered from alopecia.[1] Deputy Todd returned to appellant's home the next day, on June 29, 2017. Kathy Strickland, appellant's former wife, answered the door. She informed the deputy that appellant was in the hospital.

{¶ 3} On July 3, 2017, Deputy Todd returned to appellant's home. Strickland informed her that appellant was still hospitalized and that she was overwhelmed caring for appellant's eight dogs and numerous other animals. Subsequently, Deputy Todd called Deputy Kurt Merbs, a supervisor dog warden for the Butler County Sheriff's Office, to respond to appellant's home. Once Deputy Merbs arrived at the home, and with Strickland's written consent, he and Deputy Todd performed an animal welfare check on appellant's property.

{¶ 4} The deputies observed the two Australian cattle dogs in a very muddy outdoors-kennel. The dogs were wet and covered in mud and had no food or water. The deputies further observed numerous chickens, rabbits, rats, and mice as well as snakes and raccoons, inside the house and outside, all living in filthy and cramped conditions. The rabbits and chickens were kept in pens without water or food. One chicken was missing almost all of its feathers and had an infected beak. Deputy Todd and a state wildlife officer

---

1. Alopecia refers to a loss of hair or fur.

subsequently went to the hospital to talk to appellant. Appellant signed a waiver releasing the raccoons and snakes to the wildlife officer. Appellant, however, refused to release the other animals to Deputy Todd. Consequently, a search warrant was obtained.

{¶ 5} The search warrant was executed on July 5, 2017. Appellant was home. The record indicates appellant came home from the hospital sometime between July 3 and July 4, 2017. As before, the living conditions of the dogs, rabbits, and chickens were poor with no food or water. The Australian cattle dogs "looked just as bad as two days before," and the male dog was once again in a kennel outside. At some point after returning home, appellant had opened the rabbit cages and chicken coop behind the house and most of the chickens and rabbits were running loose on the property. The chicken with the missing feathers was observed walking into the woods and was never seen again. One of the freed rabbits had been attacked by a raccoon and was lying, barely alive, in a cat carrier. Appellant told Deputy Merbs he intended to "doctor the rabbit up." It was later euthanized.

{¶ 6} Two raccoons, 3 black rat snakes, 8 dogs, including the 2 Australian cattle dogs, 7 chickens, 3 roosters, 17 rabbits, 5 rats, 200 mice, and 2 guinea pigs were removed from the property. The Australian cattle dogs were examined by Dr. Jayme Haeussler, a veterinarian, on July 6, 2017. The female dog was dehydrated, skinny, and 20 to 25 percent underweight. Her body temperature was high. She was dripping dark colored urine. The male dog was dehydrated, skinny, and 15 percent underweight. He suffered from generalized alopecia on his trunk and had hookworms and other intestinal parasites. His ears were so infected that they were almost completely swollen shut.

{¶ 7} The female dog was further examined by Dr. David Corfman, a veterinarian, on July 7, 2017. The dog was dehydrated, 20 percent underweight, and had "expelled" bloody urine in her cage, indicating a probable urinary tract infection. The dog was further "very sore in the back, had trouble walking, very painful in [her] spine."

{¶ 8} Appellant was charged by complaints with five counts of cruelty to animals (Counts A-E) in violation of R.C. 959.13, and two counts of cruelty to companion animals (Counts F-G) in violation of R.C. 959.131(D)(2), all misdemeanors of the second degree. Counts A through D related to four rabbits, including the euthanized rabbit, Count E related to the chicken missing most of its feathers, and Counts F and G related to the two Australian cattle dogs. An additional complaint was filed charging appellant with one count of cruelty to a companion animal, the euthanized pit bull, in violation of R.C. 959.131(D)(2).

{¶ 9} The matter proceeded to a bench trial. Drs. Haeussler and Corfman, Deputy Todd, Deputy Merbs, and three other officers testified on behalf of the state. Dr. Haeussler testified that an animal's dehydration can be caused by "limited access to water or high temperatures where [the animal is] not getting enough water in." Dr. Haeussler opined that the Australian cattle dogs' conditions were consistent with that of dogs that had not been fed or given water for some time. The veterinarian further testified that it "typically takes some time" for a dog to become underweight.

{¶ 10} Dr. Corfman likewise opined that the female Australian cattle dog's condition was consistent with that of a dog that had not been properly fed or given water. Dr. Corfman further opined that the female dog had been underfed and not provided enough water. Asked whether he was surprised the female dog was still dehydrated on the day he examined her, the veterinarian replied, "[n]o. And it depends on how bad she was the day before; but no, it can take a few days of proper caring, possibly more, of proper care depending on how far down they are to try to elevate them back up to a normal level."

{¶ 11} Testimony of the officers and deputies indicated that regardless of what day they were on appellant's property, the animals were always without food and water. In addition, the animals were living in poor and filthy conditions, which included animal feces, urine, and vomit. Deputy Todd testified that while the Australian cattle dogs had bowls for

- 4 -

water and food in their kennel, the bowls were empty and had dirt at the bottom, both on July 3 and July 5, 2017, indicating the bowls had not been used for food or water between July 3 and July 5, 2017.

{¶ 12} Following Deputy Todd's testimony, the stated rested its case-in-chief. Appellant moved for acquittal pursuant to Crim.R. 29. The trial court granted the motion with respect to Count A (the euthanized rabbit), Count E (the chicken missing its feathers), and the pit bull. Anita Schuler and Strickland subsequently testified on behalf of appellant. Schuler was at appellant's home the day the officers executed the search warrant.

{¶ 13} Both women testified there was food on the property to feed the animals. Both women testified the animals were fed either daily or regularly. Both women testified they were never asked whether the animals were fed or whether there was food on the property. Strickland admitted telling Deputy Todd she was overwhelmed caring for the animals but explained she felt overwhelmed because the dogs were barking and acting crazy while Deputy Todd was on the property. Strickland further admitted her memory was poor due to a stroke and "brain injury." Schuler denied the Australian cattle dogs were underweight. In contrast to the testimony of several officers, Schuler further testified that the rabbit cages located in the basement were always clean, she never saw feces on the floors, and appellant's home was simply a little bit dusty.

{¶ 14} After appellant rested his defense, the state called Deputy Todd to testify on rebuttal. The deputy testified that she walked the entire property on July 5, 2017, and found no animal food contrary to Schuler's testimony. The deputy further testified that when she asked where the animal food was, neither appellant nor Schuler answered her question.

{¶ 15} On October 12, 2017, the trial court found appellant guilty of animal cruelty on Counts B, C, and D regarding three rabbits, and Counts F and G regarding the Australian cattle dogs. On December 28, 2017, the trial court sentenced appellant to 90 days in jail

on all five counts and suspended the jail time. Following a separate restitution hearing held in March 2018, the trial court ordered appellant to pay $831 in restitution to the Butler County Dog Warden and the Animal Friends Humane Society.

{¶ 16} Appellant now appeals, raising three assignments of error.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE COMPLAINTS IN COUNTS B, C, AND D WERE INSUFFICIENT TO INVOKE THE SUBJECT MATTER JURISDICTION OF THE TRIAL COURT.

{¶ 19} Appellant argues the trial court lacked subject-matter jurisdiction to convict him of animal cruelty on Counts B, C, and D regarding the rabbits because the respective complaints failed to describe the prohibited conduct or list the specific statutory subsection alleged to have been violated, and thus were not valid under Crim.R. 3.

{¶ 20} Subject-matter jurisdiction involves a court's power to hear a case. As such, the issue can never be waived and may be raised at any time. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 10. The filing of a valid complaint is a necessary prerequisite to a trial court's acquisition of jurisdiction. *State v. Williams*, 12th Dist. Butler No. CA2014-06-144, 2015-Ohio-1090, ¶ 8, citing *Mbodji* at ¶ 12. The question of whether a complaint is valid is a question of law which we review de novo. *Newburgh Hts. v. Hood*, 8th Dist. Cuyahoga No. 84001, 2004-Ohio-4236, ¶ 5.

{¶ 21} Crim.R. 3 provides, "The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths." Thus, there are three requirements for a complaint to be valid under Crim.R. 3. *Mbodji* at ¶ 12; *State v. Jones*, 11th Dist. Portage Nos. 2010-P-0051 and 2010-P-0055, 2011-Ohio-5109, ¶ 16. The complaint must (1) set forth a written statement of the facts that constitute the essential elements of the offense charged, (2) state the

numerical designation of the statute or municipal ordinance which the defendant allegedly violated, and (3) be made under oath before any person authorized by law to administer oaths.

{¶ 22} "The essential elements of a given offense are those facts which must be proven to obtain a conviction of the accused." *Jones* at ¶ 16. "'While all the specific facts relied upon to sustain the charge need not be recited, the material elements of the crime must be stated.'" *Hood*, 2004-Ohio-4236 at ¶ 9, quoting *State v. Burgun*, 49 Ohio App. 2d 112 (8th Dist.1976), paragraph one of the syllabus. "'The numerical designation of the applicable criminal statute in a complaint does not cure the defect in failing to charge on all the essential elements of the crime.'" *Hood* at ¶ 9, quoting *Burgun* at paragraph two of the syllabus.

{¶ 23} The complaints charging appellant with cruelty to animals in Counts B, C, and D merely stated that appellant "did unlawfully violate [R.C.] 959.13 M2." "M2" stands for misdemeanor of the second degree. The complaints did not set forth the underlying facts of the offense as required by Crim.R. 3, did not provide any of the statutory language, and failed to specify which of the five subsections of R.C. 959.13 appellant was charged with violating. As the Sixth Appellate District aptly stated, "Being charged with violating R.C. [959.13] is not specific enough to make the complaint sufficient. Not only is there no subsection on the complaint, there are no facts describing the event appellant was arrested for. Not designating or implying the specific subsection leaves a material element to conjecture." *State v. Echemendia*, 6th Dist. Ottawa No. OT-95-059, 1996 Ohio App. LEXIS 3523, *5 (Aug. 23, 1996).

{¶ 24} We therefore find that the complaints charging appellant with animal cruelty in Counts B, C, and D were not valid under Crim.R. 3. *See State v. Newell,* 6th Dist. Erie No. E-08-064, 2009-Ohio-1816; *State v. Sallee*, 6th Dist. Erie No. E-11-042, 2012-Ohio-

3617; *Hood*, 2004-Ohio-4236. Consequently, because the trial court's subject-matter jurisdiction was not properly invoked by the filing of these complaints, the trial court lacked jurisdiction to convict appellant of cruelty to animals on Counts B, C, and D. Appellant's animal cruelty conviction regarding the three rabbits is accordingly vacated.

{¶ 25} Appellant's first assignment of error is sustained.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS FOR PROHIBITIONS CONCERNING COMPANION ANIMALS IN COUNTS F AND G.

{¶ 28} Appellant argues his conviction for cruelty to companion animals on Counts F and G regarding the two Australian cattle dogs is not supported by sufficient evidence. Specifically, appellant asserts the evidence was insufficient to establish he was negligent in failing to provide adequate food or water to the dogs as he was hospitalized for approximately a week before the dogs were examined and found to be dehydrated, underweight, and sick.

{¶ 29} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 23. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 30} Appellant was convicted of violating R.C. 959.131(D)(2), which provides

No person who confines or who is the custodian or caretaker of a companion animal shall negligently [d]eprive the companion animal of necessary sustenance or confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation or confinement.

{¶ 31} R.C. 2901.22(D) provides that "[a] person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature." "A person is negligent with respect to circumstances when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that such circumstances may exist." *Id.*

{¶ 32} Upon reviewing the record, we find that appellant's conviction for cruelty to companion animals on Counts F and G is supported by sufficient evidence as any rational trier of fact could have found the essential elements of cruelty to companion animals proven beyond a reasonable doubt. The state presented evidence that the two Australian cattle dogs were both dehydrated and abnormally underweight not only on July 3, 2017, when appellant was hospitalized, but also on July 5, 2017, when appellant had been back home for a day or two. Moreover, the state presented Deputy Todd's testimony that the dogs were underweight and in poor condition on June 28, 2017, before appellant's hospitalization. In other words, the dogs' condition at the time of their removal on July 7, 2017, was consistent with their condition on June 28, 2017, when they were under appellant's care.

{¶ 33} The state further presented evidence that the dogs had no food or water on July 3 and July 5, 2017, during and after appellant's hospitalization, and that Deputy Todd's search of appellant's property on July 5, 2017, did not reveal the presence of food to feed the dogs. Veterinarians testified that the Australian cattle dogs' dehydration and

malnourished conditions were consistent with that of dogs that had not been fed or given water for some time. Dr. Haeussler further testified that it "typically takes some time" for a dog to become underweight. Again, as stated above, the dogs were already underweight in June 28, 2017. Moreover, the state presented evidence of the filthy and cramped living conditions of the animals on appellant's property, thereby establishing a general pattern of neglect of the animals, including the Australian cattle dogs.

{¶ 34} We note appellant's contention that the evidence merely established that the female Australian cattle dog was underweight or skinny, but not emaciated. However, "even though evidence of severe malnutrition, starvation, and emaciation is extremely probative of the lack of sufficient food, it is not necessary evidence, and a lesser degree of nutritional deprivation may be sufficient to sustain a conviction if the animal is not receiving enough food to meet the needs of the situation." *Akron v. Donnelly*, 9th Dist. Summit No. 16821, 1995 Ohio App. LEXIS 699, *9-10 (Feb. 22, 1995); *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 32.

{¶ 35} Appellant further contends there were other factors that could have caused or contributed to the dogs' condition, such as intestinal parasites for the male dog and a possible urinary tract infection for the female dog. However, upon viewing the evidence in a light most favorable to the prosecution, we find the state presented sufficient evidence that appellant negligently failed to provide adequate food and water for the Australian cattle dogs.

{¶ 36} Appellant's second assignment of error is overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY RESTITUTION.

{¶ 39} Appellant argues the trial court erred in ordering him to pay $831 in restitution

to the Butler County Dog Warden and the Animal Friends Humane Society because neither are a victim of appellant as required under R.C. 2929.28(A).

{¶ 40} R.C. 2929.28(A)(1) provides that when sentencing a defendant for a misdemeanor, a trial court may impose "any financial sanction or combination of financial sanctions authorized under [R.C. 2929.28(A)]," including "restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss."

{¶ 41} We uphold the trial court's restitution order for the following reasons. The record shows that appellant not only failed to object to paying restitution to the dog warden and humane society during the restitution hearing, he further stipulated to the restitution payment. A failure to object to a trial court's award of restitution waives all but plain error. *State v. Stewart,* 3d Dist. Allen No. 16-08-11, 2008-Ohio-5823, ¶ 7. Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990). Appellant's stipulation of the restitution payment "served as a sufficient basis for the trial court * * * to order appellant to pay restitution" to the dog warden and humane society. *State v. Silbaugh*, 11th Dist. Portage No. 2008-P-0059, 2009-Ohio-1489, ¶ 21.

{¶ 42} Furthermore, under the invited-error doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the trial court to make. *State v. Neyland,* 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 243. The invited-error doctrine applies to cases in which the defendant argues on appeal that the trial court lacked authority to impose restitution. *State v. Savage*, 4th Dist. Meigs No. 15CA2, 2015-Ohio-4205, ¶ 14. Given appellant's stipulation at the restitution hearing, any argument that the trial court had no authority to impose restitution is contrary to appellant's position at the restitution hearing

and precluded by the invited-error doctrine. *Silbaugh* at ¶ 22; *State v. Jackson*, 8th Dist. Cuyahoga No. 99059, 2013-Ohio-3136, ¶ 15.

{¶ 43} Appellant's third assignment of error is overruled.

{¶ 44} The first assignment of error having been sustained, appellant's conviction for animal cruelty on Counts B, C, and D regarding three rabbits is reversed and vacated. All other assignments of error having been overruled, the judgment of the trial court is affirmed in all other respects.

HENDRICKSON, P.J., and S. POWELL, J., concur.