[Cite as *State v. Hensley*, 2023-Ohio-119.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-06-055 |
| | : | O P I N I O N |
| - vs - | | 1/17/2023 |
| | : | |
| BRANDON WILLIAM HENSLEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR37317

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

**BYRNE, J.**

{¶ 1} Brandon William Hensley was convicted of two criminal offenses by the Warren County Court of Common Pleas. The trial court ordered Hensley to pay $14,635 in restitution to an insurance company, and Hensley appealed only that portion of his sentence. For the reasons outlined below, we reverse.

**I. Factual and Procedural Background**

{¶ 2} Hensley, who was intoxicated with a breath-alcohol content of .108, caused a

motor vehicle accident between himself and another driver ("the victim"), on the night of September 25, 2020. The accident occurred while Hensley and the victim were traveling in opposite directions on Stubbs Mills Road in Morrow, Warren County, Ohio. Hensley fled the scene of the accident and was subsequently arrested in a nearby soybean field approximately one-half mile from where his severely damaged motor vehicle was located.

{¶ 3} A jury found Hensley guilty of operating a vehicle while under the influence of alcohol ("OVI"), a third-degree felony.[1] The jury also found Hensley guilty of first-degree misdemeanor failure to stop after an accident.

{¶ 4} The trial court subsequently held a sentencing hearing. Following allocution, the trial court sentenced Hensley to a total, aggregate prison sentence of seven years and six months in prison, ordered Hensley to pay a mandatory fine of $1,350, suspended Hensley's driver's license for a period of 10 years, and notified Hensley that he would be subject to an optional three-year postrelease control term upon his release from prison. The trial court also ordered Hensley to pay restitution to the victim's insurance company, the Wilbur Group, in the amount of $14,635. This was the amount the Wilbur Group had paid to the victim pursuant to the victim's insurance policy to compensate the victim for the damage Hensley caused to her car. Hensley appealed.

**II. The Appeal**

{¶ 5} On appeal, Hensley raises the following single assignment of error for our review:

{¶ 6} THE TRIAL COURT ERRED IN ORDERING RESTITUTION TO THE VICTIM'S INSURANCE COMPANY.

{¶ 7} In his single assignment of error, Hensley argues the trial court erred by

---

1. The record indicates that this is Hensley's eighth OVI conviction and fourth felony OVI conviction.

ordering him to pay restitution to the Wilbur Group.[2]  Before we address the merits of Hensley's argument, we must address the applicable standard of review and whether Hensley waived all but plain error.

## A. Standard of Review and Plain Error

{¶ 8}  We have explained the standard of review applicable to our review of a trial court's restitution sentence in a felony case as follows:

> "[T]he proper standard of review for analyzing the imposition of restitution as a part of a felony sentence is whether the sentence complies with R.C. 2953.08(G)(2)(b)." *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, ¶ 31. Pursuant to R.C. 2953.08(G)(2)(b), this court may increase, reduce, or otherwise modify a sentence that is appealed, or vacate the sentence and remand the matter for resentencing, if we clearly and convincingly find the sentence is contrary to law. *State v. Geldrich*, 12th Dist. Warren No. CA2015-11-103, 2016-Ohio-3400, ¶ 12. The term "sentence" as utilized in R.C. 2953.08(G)(2)(b) encompasses an order of restitution. *Id.* at ¶ 6.  This is an "extremely deferential" standard of review for the restriction is on the appellate court, not the trial judge. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 43.

*State v. Blevings*, 12th Dist. Warren No. CA2014-11-135, 2018-Ohio-4382, ¶ 16.

{¶ 9}  In *Blevings* we further determined that we should apply a plain error standard when the defendant did not object to the trial court's order of restitution at the sentencing hearing.  *Id.* at ¶ 17.  Here, the state argues that Hensley did not object to the trial court's decision ordering him to pay restitution to the Wilbur Group, so we should review the trial court's restitution order for plain error.  Hensley disagrees with the state's assertion that he did not object to paying restitution to the Wilbur Group.  Hensley points to the following exchange that occurred during the sentencing hearing:

DEFENDANT HENSLEY: The only thing I can add is the

---

2. Hensley also argues that the trial court failed, in calculating restitution, to take into consideration what his own insurance company may have paid to the victim/the Wilbur Group.  Given our resolution of this assignment of error, we find this issue to be moot.

woman whose vehicle got hit, my insurance company, I had insurance. The insurance company was going to cover the car. I didn't have contact with her because when it all came out, there was a restraining order for whatever reason, I'm not even sure about that, so I did have my insurance company contact her. Her insurance company did contact me, so as of now, because I had insurance. My insurance company contacted her to cover that bill.

[HENSLEY'S TRIAL COUNSEL]: I forgot to ask that, Your Honor. The Municipal Court Judge at the preliminary hearing put a no contact order in place. I think it was a no contact order, not a protection order.

DEFENDANT HENSLEY: A no contact order.

[HENSLEY'S TRIAL COUNSEL]: He's court ordered not to have any contact with the victim. Obviously, not a third party either, so—

DEFENDANT HENSLEY: Being the owner of the car, her insurance company sent me a letter wanting me to pay the bill, but I just left it alone, because I didn't know if I would be crossing the line contacting that source, so – I just kind of let that alone.

{¶ 10} Hensley argues that while he did not explicitly object to paying restitution to the Wilbur Group, the above-quoted exchange shows that he "certainly disputed (and essentially, objected) to personally paying restitution to the actual victim's insurance company." If that was Hensley's intent, the record does not so reflect. Hensley and his trial counsel merely provided information to the trial court about a no contact order and how that order impacted Hensley's communications with the victim's insurance company. Hensley concluded by stating that he ultimately did not respond to the victim's insurance company's communications. We do not infer an objection to paying restitution to the Wilbur Group based on Hensley's purely descriptive statements at the sentencing hearing. Notably, Hensley's trial counsel does not seem to have understood Hensley to be making an objection to restitution either, as he did not follow up with a more clearly defined objection and limited his comments to addressing the no-contact order. Notably, this exchange

occurred *after* the state had asked the trial court to order Hensley to pay restitution to the Wilbur Group, so Hensley had an opportunity to object. He simply failed to do so.

{¶ 11} A failure to object to a trial court's award of restitution waives all but plain error. *State v. Schuler*, 12th Dist. Butler No. CA2018-04-067, 2019-Ohio-1585, ¶ 41. Because Hensley did not object to the trial court ordering him to pay restitution to the Wilbur Group, he waived all but plain error with respect to that issue.

{¶ 12} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To constitute plain error there must be a deviation from a legal rule. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Second, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 30. Third, the error must have affected Hensley's substantial rights, that is, the error must have affected the outcome of the trial. *Barnes* at 27. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Liming*, 12th Dist. Clermont Nos. CA2018-05-028 and CA2018-05-029, 2019-Ohio-82, ¶ 35.

**B. Interpretation of Constitutional and Statutory Language**

{¶ 13} As explained further below, this case involves questions regarding the meaning of language in a statute and language that was added to the Ohio Constitution when the state's voters approved a constitutional amendment. The Ohio Supreme Court explained how to construe such language in a recent case:

> In construing constitutional text that was ratified by direct vote, we consider how the language would have been understood by the voters who adopted the amendment. *Castleberry v. Evatt*, 147 Ohio St. 30, 33, 67 N.E.2d 861 (1946); *see also State ex rel. Sylvania Home Tel. Co. v. Richards*, 94 Ohio St. 287, 294, 114 N.E. 263 (1916) (when interpreting the Ohio Constitution, "[i]t is the duty of the court to ascertain and give effect to the

> intent of the people"). The court generally applies the same rules when construing the Constitution as it does when it construes a statutory provision, beginning with the plain language of the text, *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14, and considering how the words and phrases would be understood by the voters in their normal and ordinary usage, *District of Columbia v. Heller*, 554 U.S. 570, 576-577, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

*Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, ¶ 22. "[W]e presume that the voters were aware of the laws in existence at the time they voted to adopt the constitutional amendment." *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298, ¶ 9. "It is also axiomatic that the words of the provision passed, except when otherwise indicated, are to be given their ordinary meaning." *Id.*

**C. Analysis**

**{¶ 14}** The statute at issue in this case is R.C. 2929.18(A)(1). The statute provides that a court may sentence a felony offender to pay restitution to the victim "in an amount based on the victim's economic loss * * * provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1).

**{¶ 15}** Prior to 2004, the statute further stated that the restitution "may include a requirement that reimbursement be made to third parties for amounts paid to or on behalf of the victim * * * for economic loss resulting from the offense." Former R.C. 2929.18(A)(1), 148 Ohio Laws, Part III, 5767, 5785. The Ohio Supreme Court held that this language authorized courts to sentence offenders to pay restitution to a victim's insurance company as reimbursement for amounts the insurance company paid on behalf of the victim. *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, ¶ 13 (applying pre-2004 amendment version of the R.C. 2929.18(A)(1)). However, in 2004 the General Assembly removed this language regarding restitution to third parties from the statute. 150 Ohio Laws, Part III,

3914, eff. 6-1-2004.

{¶ 16} The Ohio Supreme Court considered the General Assembly's removal from R.C. 2929.18(A)(1) of the language regarding third parties in *State v. Bartholomew*, 119 Ohio St.3d 359, 2008-Ohio-4080. The supreme court concluded that the removal of that language merely made clear that restitution to certain third parties was optional, rather than mandatory, and noted that the statute still specifically referred to the option of ordering restitution to adult probation departments, clerks of court, and "'another agency designated by the court.'" *Id.* at ¶ 13–27, quoting R.C. 2929.18(A)(1). However, the court's holding was narrower, as it found "that R.C. 2929.18(A)(1) authorizes a trial court to order that a criminal defendant pay restitution to the reparations fund for payments made by the fund to a victim of crime for economic loss caused by the offender." *Id.* at ¶ 17. The *Bartholomew* court did not specifically address the impact that the removal of the third party language from R.C. 2929.18(A)(1) may have on orders of restitution payable to a victim's insurance company.

{¶ 17} In a subsequent case, the Ohio Supreme Court again noted the General Assembly's removal of the language regarding restitution to third parties from the statute. *State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, ¶ 1. This time the supreme court explained that, "[g]iven these deletions, 'the legislature's intent to disallow payment to victims' insurance companies is clear.'" *Id.*, quoting *State v. Johnson*, 1st Dist. Hamilton No. C-100702, 2011-Ohio-5913, ¶ 5. The supreme court further stated that "[i]n cases in which sentencing occurs after June 1, 2004, '[a] court may not order a defendant to pay restitution to a victim's insurance company.'" *Id.*, quoting Baldwin's Ohio Practice, Criminal Law, Section 119:6 (2013).

{¶ 18} We reached the same conclusion in *State v. Christman*, 12th Dist. Preble No. CA2009-03-007, 2009-Ohio-6555, a few years before the Ohio Supreme Court's decision

in *Aguirre*. In *Christman*, we held that a trial court erred when it ordered a defendant to pay restitution to a victim's insurance company and explained that a private insurance company is not a permissible third party that may receive restitution under R.C. 2929.18(A)(1). *Id.* at ¶ 18.

{¶ 19} We were hardly alone. Many of our sister courts of appeals reached the same conclusion. *See, e.g.*, *State v. Johnson*, 1st Dist. Hamilton No. C-100702, 2011-Ohio-5913, ¶ 5 (the trial court erred in ordering restitution to an insurance company because "[g]iven [the General Assembly's 2004] deletion, the legislature's intent to disallow payment to victims' insurance companies is clear."); *State v. Colon*, 2d Dist. Clark No. 09-CA-09, 2010-Ohio-492, ¶ 5–6 (the trial court erred by ordering restitution to victim's insurance company); *State v. Perkins*, 3d Dist. Seneca, No. 13-10-02 and 13-10-03, 2010-Ohio-5058, ¶ 16 ("In light of [R.C. 2929.18(A)(1)'s] requirement that only a victim of the crime or survivor of the victim be authorized to receive restitution, a trial court may not order restitution to an insurance company for amounts expended to cover the victim of a crime."); *State v. Kelly*, 4th Dist. Pickaway Nos. 10CA28 and 10CA29, 2011-Ohio-4902, ¶ 7 ("Under R.C. 2929.18(A)(1), courts are not permitted in criminal cases to award restitution to third parties, including insurance carriers."); *State v. Allen*, 8th Dist. Cuyahoga No. 98394, 2013-Ohio-1656, ¶ 18, quoting *Johnson*, 2011-Ohio-5913, at ¶ 5 (the trial court erred in ordering restitution to an insurance company because "'[g]iven [the General Assembly's 2004] deletion, the legislature's intent to disallow payment to victims' insurance companies is clear.'"); *State v. Johnson*, 10th Dist. No. 14AP-336, 2014-Ohio-4826, ¶ 7, 15 (rejecting "the notion that an insurance company becomes a victim simply because, pursuant to a contract, the company agreed to and in fact reimbursed its insured for losses caused by criminal conduct" and finding that the trial court erred "by ordering appellant to pay restitution to the insurance company.").

{¶ 20} More recently, the Ohio Supreme Court reemphasized that R.C. 2929.18(A)(1) does not authorize trial courts to order restitution to a victim's third-party insurance company in *State v. Allen*, 159 Ohio St.3d 75, 2019-Ohio-4757. Allen was convicted of forgery for cashing several forged checks at three banks. *Id.* at ¶ 1–2. The trial court ordered Allen to pay restitution to the banks. *Id.* On appeal, Allen argued that the banks were not "victims" under R.C. 2929.18(A)(1) and just as a court could not lawfully sentence a defendant to pay restitution to a third-party insurance company under that statute, a court could not lawfully order him to pay restitution to the banks that cashed his forged checks. *Id.* at ¶ 2, 11. The supreme court distinguished third-party insurance companies from the banks and concluded that the banks were themselves "victims" under R.C. 2929.18(A)(1) because "it is the bank that is defrauded and hence, it is the bank that is object of the crime; it is the bank that suffers the economic loss; and, it is the bank that loses property in which it has an interest at the moment of the fraud." *Id.* at ¶ 12. In so doing, the supreme court explained why third-party insurance companies are not themselves "victims" for purposes of R.C. 2929.18(A)(1):

> In arguing that restitution is improper, Allen looks to caselaw involving insurance companies. *We have suggested that under the current version of R.C. 2929.18(A)(1), insurance companies may not receive restitution for economic losses after they reimburse a customer for a loss covered by an insurance policy. See, e.g.*, *State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, ¶ 1. But there is a significant difference between an insurance company, which might ultimately suffer an economic loss, and a bank that is hoodwinked by a fraudulent-check scheme. When an insurance company makes a payment owed under a contract, it is merely fulfilling an obligation that it voluntarily took on to protect another against a loss. In such a case, it is hard to describe the insurer as a victim of a crime when it was not the target of the crime and when it was merely providing the service that it had agreed to perform in return for the payment of an insurance premium. An insurer contracts to take on a risk. It does not become a victim merely because that risk comes to pass.

*Id.* at ¶ 11.[3] (Emphasis added.)

{¶ 21} On appeal, Hensley argues that the trial court erred in sentencing him to pay restitution to the Wilbur Group because a victim's insurance company is not a "victim" under the statute. Hensley cites *Aguirre*, *Allen*, *Colon*, *Christman*, and other cases summarized above. Given these cases' unanimity in concluding that a crime victim's third-party insurance company is not a "victim" under R.C. 2929.18(A)(1), Hensley's argument at first appears open and shut.

{¶ 22} But it is not open and shut. In November 2017, Ohio voters approved an amendment to the crime victim's rights provision of the Ohio Constitution. *Knab*, 2020-Ohio-5219, at ¶ 11–15. Effective February 5, 2018, Article I, Section 10a of the Ohio Constitution, commonly referred to as Marsy's Law, expanded the rights afforded to crime victims. *State ex rel. Suwalski v. Peeler*, 12th Dist. Warren No. CA2019-05-053, 2020-Ohio-3233, ¶ 10. This includes the right of a victim "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim[.]" Ohio Constitution, Article I, Section 10a(A)(7). The Ohio Supreme Court has held that "Marsy's Law also does not provide a procedural mechanism for ordering restitution. It merely states that a victim may assert his or her constitutional rights in any proceeding involving the underlying criminal act * * * The provisions of the amendment are self-executing and 'supersede all conflicting state laws.'" *Knab* at ¶ 18, quoting Ohio Constitution, Article I, Section 10a(E). The state argues the trial court did not err when it sentenced Hensley to pay restitution to the Wilbur Group because Marsy's Law expanded the definition of "victim," making that term broad enough to include a victim's third-party insurance company.

---

3. *Allen* was decided after Marsy's Law became effective but did not refer to Marsy's Law, presumably because the trial court issued its restitution order before Marsy's Law became effective. Additionally, the Supreme Court later noted that in *Allen* it was "not asked to consider the definition of a 'victim' under Marsy's Law." *Knab*, 2020-Ohio-5219, at ¶ 21.

{¶ 23} In *Allen*, the Ohio Supreme Court noted that "'[v]ictim' is not defined in R.C. 2929.18," and explained that "[w]hen a word is not defined in a statute, we look to its ordinary meaning—that is, how it would commonly be understood in the context in which it occurs."[4] *Allen*, 2019-Ohio-4757, at ¶ 4. The supreme court looked to the definition of "victim" found in *Black's Law Dictionary*, which "defines 'victim' as a person or entity 'harmed by a crime, tort, or other wrong.'" *Id.*, quoting *Black's Law Dictionary* 1798 (10th Ed.2014). For purposes of this case we do not need to expound the precise contours of the meaning of "victim" under R.C. 2929.18(A)(1) because courts have already overwhelmingly concluded that, whatever the definition of "victim" under that statute, a third-party insurance company that pays a victim for a loss caused by a criminal offense pursuant to a contract of insurance is not a "victim" under the statute. *See supra* at ¶ 17–20.

{¶ 24} Marsy's Law, unlike R.C. 2929.18(A)(1), does include a definition for "victim." Marsy's Law defines "victim" as "a person against whom the criminal offense or delinquent act is committed *or* who is directly and proximately harmed by the commission of the offense or act." Ohio Constitution, Article I, Section 10a(D). (Emphasis added). The state does not argue that the Wilbur Group is "a person against whom the criminal offense or delinquent act is committed." *Id.* We agree that it is not. The state instead argues that the Wilbur Group is a person "who is directly and proximately harmed by the commission of the act or offense." *Id.* The state reasons that the Wilbur Group "suffered an economic loss of $14,635 for the amount it paid out for damages to [the victim's] vehicle," that the damage was caused by Hensley, and that the Wilbur Group "would not have had to pay for the damages but for Hensley's criminal conduct." The state argues that this means "the Wilbur

---

4. The state suggests we borrow the definition of victim found in R.C. 2930.01(H), as some other courts have done. But we rejected this approach in *State v. Lee*, 12th Dist. Warren No. 2018-11-134, 2019-Ohio-4725, ¶ 10 ("This court has followed the latter position, holding that R.C. 2930.01(H)(1)'s definition of 'victim' does not apply for purposes of restitution under R.C. 2929.18(A)(1).").

Group was directly and proximately harmed by Hensley's commission of OVI."

**{¶ 25}** As stated above, Marsy's Law requires that a victim be both "directly and proximately" harmed by the criminal act. The word "and" is conjunctive, while the word "or" is disjunctive. Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 116–25 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives."); Conjunctive/Disjunctive Canon, *Black's Law Dictionary* (11th Ed.2019) ("[I]n a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives."). In other words, when "or" is used, the words joined by "or" are alternatives. *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, ¶ 18; Scalia & Garner at 116. But when "and" is used, both of the words joined by "and" must be satisfied. *Judy v. Ohio Bur. of Motor Vehicles*, 100 Ohio St.3d 122, 2003-Ohio-5277, ¶ 14; Scalia & Garner at 116. Because Marsy's Law defines a "victim" as a person who is both "directly *and* proximately" harmed by the criminal act, it is not enough that there be merely a causal connection between the criminal act and the harm ultimately sustained by a third-party such as an insurer. The resulting harm must not only be the "proximate" result of the criminal act but must also be the "direct" result of the criminal act.

**{¶ 26}** Certainly, there was a causal connection between Hensley's criminal conduct and the Wilbur Group's loss, perhaps sufficient to say that the Wilbur Group's loss was a *proximate* or foreseeable result of Hensley's criminal act. However, the Wilbur Group's loss was not a *direct* result of Hensley's criminal offense. Stated otherwise, there were intervening factors between Hensley's criminal conduct and the Wilbur Group's loss. Specifically, the Wilbur Group only paid the victim $14,635 because it was required to do so by its insurance contract with the victim. As the Ohio Supreme Court explained in *Allen*, the Wilbur Group's payment was the fulfillment of an obligation that it voluntarily took on. *Allen*, 2019-Ohio-4757 at ¶ 11. The Wilbur Group was not the target of Hensley's crimes,

and the Wilbur Group "was merely providing the service that it had agreed to perform in return for the payment of an insurance premium." *Id.* The Wilbur Group contracted to take on a risk and "[did] not become a victim merely because that risk [came] to pass." *Id.* Absent its insurance contract with the victim, Hensley's criminal acts would have been of no consequence to the Wilbur Group. It was only by happenstance of the insurance contract that the Wilbur Group was required to pay for the loss occasioned by Hensley's criminal conduct.

{¶ 27} This interpretation is supported by *State v. Johnson*, 3d Dist. Lorain No. 8-20-42, 2021-Ohio-1869, ¶ 9-11. In that case the Third District found that the Ohio Victims of Crime Compensation Program ("OVCCP"), which reimbursed a man who was a passenger on a bus and injured when the bus was struck by a meth user (convicted of aggravated vehicular assault), was not a "victim" under Marsy's Law because the OVCCP was not a person against whom the criminal offense was committed and was not "directly and proximately harmed" by the commission of the offense.

{¶ 28} The dissent cites our precedent in *State v. Lee,* 12th Dist. Warren No. CA2018-11-134, 2019-Ohio-4725, where we held that two banks that had paid forged checks were "victims" under Marsy's Law. Relying upon *Lee*, the dissent extends the holding to insurers. However, such an extension is not only inconsistent with the supreme court's recognition in *Allen* that an insurer is only indirectly affected by criminal conduct giving rise to an insurance claim, but also with our reasoning in *Lee.* In *Lee*, we specifically noted that the offender dealt directly with the banks and deceived them into releasing funds upon the presentment of forged checks, resulting in an immediate economic loss to the banks. *Id.* at ¶ 13. The absence of those factors in the case at bar renders *Lee* inapplicable and disqualifies the Wilbur Group as a "victim" under Marsy's Law. There was no direct interaction between Hensley and the Wilbur Group, nor did the Wilbur Group incur an

immediate economic loss upon the commission of Hensley's crimes.

**{¶ 29}** During the pendency of this case with our court, the Ohio Supreme Court considered a related issue in another case. *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298. In *Yerkey* the supreme court considered whether Marsy's Law permitted a trial court to order a criminal offender to pay restitution to a victim to reimburse the victim for wages lost at work while taking time off work to attend court proceedings. *Id.* at ¶ 1, 5. The supreme court held that "losses of the sort claimed by the victim in this case do not flow as a natural and continuous consequence from the commission of the offense such that they may be considered 'economic loss[es] suffered by the victim as a direct and proximate result of the commission of the offense.'" *Id.* at ¶ 17, quoting R.C. 2929.18(A)(1). Though the supreme court's analysis did not concern the use of the phrase "directly and proximately" as used in the definition of "victim" in Marsy's Law, but rather concerned the phrase "direct and proximate" with regard to the types of losses that may be subject to restitution, we believe the supreme court's reasoning is consistent with our analysis above. Just as a victim's decision to attend court proceedings is not a "direct and proximate" result of the commission of the criminal offense, a third-party insurance company's payment pursuant to an insurance contract does not make that insurance company a person "directly and proximately harmed by the commission of the offense or act." Ohio Constitution, Article I, Section 10a(D). Because the supreme court concluded that "[n]othing in Marsy's Law explicitly or implicitly changes what losses qualify for restitution in Ohio," we see no reason to conclude that the supreme court would find that Marsy's Law alters its analysis regarding insurance in *Aguirre* and *Allen. Yerkey* at ¶ 15.

**{¶ 30}** Finally, we note that because we have found that the Wilbur Group is not a "victim" under Marsy's Law, there is no constitutional or statutory authority for the trial court's sentence ordering Hensley to pay restitution to the Wilbur Group. As such, the trial court's

order is contrary to law and we may accordingly reverse that portion of Hensley's sentence. R.C. 2953.08(G)(2)(b). That portion of the sentence was also plain error.

### III. Conclusion

{¶ 31} Based on the foregoing, we find that an insurance company that makes a payment to a victim of a crime pursuant to a policy of insurance to compensate the victim for the harm caused by the crime is not itself a "victim" under either Marsy's Law or R.C. 2929.18(A)(1). The trial court therefore committed plain error when it sentenced Hensley to pay restitution of $14,635 to the Wilbur Group.

{¶ 32} We accordingly find Hensley's assignment of error to be well taken. Pursuant to App.R. 12(B), we hereby modify the trial court's judgment entry of sentence by vacating the restitution award of $14,635 to the Wilbur Group. As thus modified, the judgment of the trial court is hereby affirmed.

M. POWELL, P.J., concurs.

S. POWELL, J., dissents.

**S. POWELL, J., dissenting.**

{¶ 33} As noted by the majority, in his single assignment of error, Hensley initially argues the trial court erred by ordering him to pay restitution to the victim's insurance company, the Wilbur Group. I disagree and find no error, plain or otherwise, in the trial court's decision. I must therefore respectfully dissent.

{¶ 34} Hensley argues the trial court erred by ordering him to pay restitution to the Wilbur Group because an insurance company is not considered a "victim" under R.C. 2929.18(A)(1). The Ohio Supreme Court has "suggested that under the current version of R.C. 2929.18(A)(1), insurance companies may not receive restitution for economic losses after they reimburse a customer for a loss covered by an insurance policy." *State v. Allen*,

159 Ohio St.3d 75, 2019-Ohio-4757, ¶ 11, citing *State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, ¶ 1. The Ohio Supreme Court, however, has been silent as to whether that remains true under Marsy's Law, Article I, Section 10a of the Ohio Constitution.

{¶ 35} Marsy's Law provides a "victim" with the right "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim." Article I, Section 10a(A)(7), Ohio Constitution. The term "victim" is defined in Marsy's Law to mean "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Article I, Section 10(a)(B), Ohio Constitution.[5]

{¶ 36} In *State v. Lee*, 12th Dist. Warren No. CA2018-11-134, 2019-Ohio-4725, this court applied Marsy's Law and, most importantly, the more inclusive definition of the term "victim" contained in Marsy's Law, to find Lebanon Citizens National Bank ("LCNB") and Fifth Third Bank ("Fifth Third") were "victims" entitled to an award of restitution under R.C. 2929.18(A)(1). In so holding, this court stated:

> In this case, Lee went to the banks to cash fraudulent checks, deceiving the banks into releasing the funds. Since the funds were not properly payable, the banks were required to reimburse the accountholders. The accountholders were victims of Lee's crimes, but so were the banks, which suffered the direct economic loss caused as a proximate result of Lee's criminal conduct. Based on the more inclusive definition of "victim," we find both LCNB and Fifth Third are victims entitled to restitution under R.C. 2929.18. As a result, we find the trial court erred in denying restitution. The state's sole assignment of error is sustained.

*Id.* at ¶ 13.

{¶ 37} When considering our decision in *Lee*, and when applying the more inclusive

---

5. I note the Ohio Supreme Court's recent decision in *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298, finding "[t]he statutory meaning of restitution was not altered or expanded by Marsy's Law." *Id.* at ¶ 19. The Ohio Supreme Court's decision in *Yerkey*, however, did not address whether the same holds true for the statutory meaning of victim.

definition of the term "victim" contained in Marsy's Law to the case at bar, I find no error in the trial court's decision ordering Hensley to pay restitution to the victim's insurance company, the Wilbur Group. This is because the Wilbur Group, just like LCNB and Fifth Third in *Lee*, suffered a direct economic loss that was caused as a proximate result of Hensley's criminal conduct. That is to say, Hensley's criminal conduct was both a direct *and* proximate cause of the Wilbur Group's loss. This holds true even though the Wilbur Group had a contractual obligation to protect the victim against the type of loss the victim suffered in this case.

{¶ 38} In reaching this decision, I note that while it may be hard to describe an insurance company as a "victim" of a crime under R.C. 2929.18(A)(1), I believe that insurance companies, just like banks, fit squarely within the more inclusive definition of "victim" set forth in Marsy's Law, Article I, Section 10(a)(B) of the Ohio Constitution.

{¶ 39} Banks operate under contract with their depositors. So do insurance companies with their insureds. Banks and insurance companies are also highly regulated industries that necessitate persons coming to the bank/insurance company to protect their property, whether that be cash money or something more akin to a motor vehicle. Banks and insurance companies are further expected to make their depositors/insureds whole when the depositor/insured incurs a loss, something that the victim in this case did as a direct and proximate result of Hensley's criminal conduct. Both banks and insurance companies are additionally considered persons under the law. *See* R.C. 1.59(C) (defining "person" to include not only individuals, but also corporations, business trusts, estates, trusts, partnerships, and associations). Therefore, to say one, a bank, is a "victim," and the other, an insurance company, is not, is a distinction without a difference given the more inclusive definition of the term "victim" contained in Marsy's Law. To the extent the majority holds otherwise, I disagree.

{¶ 40} Also in reaching this decision, I note my belief that a convicted criminal defendant should not be entitled to avoid paying restitution simply because the victim(s) of his or her criminal conduct happened to be insured. This should be the case regardless of whether it was the ordinary meaning of the word "victim" under R.C. 2929.18(A)(1) or the more inclusive definition of the term "victim" contained in Marsy's Law that applied. The majority's decision does just that. Therefore, because I find no error, plain or otherwise, in the trial court's decision ordering Hensley to pay restitution to the victim's insurance company, the Wilbur Group, I respectfully dissent.

{¶ 41} In so doing, it should be noted that I would sustain Hensley's other argument set forth within his single assignment of error claiming it was error for the trial court not to offset that restitution order with a reduction for Hensley's insurance coverage. R.C. 2929.18(A)(1) specifically states that "the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." Double recovery from both Hensley and Hensley's insurance company would amount to an impermissible economic windfall for the Wilbur Group.